LANTEEN MEDICAL LABORATORIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12986. Promulgated February 10, 1948.

*Tim G. Lowry, Esq.*, for the petitioner.
*Charles D. Leist, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Presumably because of the close relationship between the petitioner and the parent company, the respondent has determined that petitioner's basis for gain or loss on the securities in question should be their fair market value of $39,759.38 on December 31, 1937, rather than the $61,514.18 which petitioner actually paid. He cites *Majestic Securities Corporation* v. *Commissioner*, 120 Fed.

(2d) 12, and *New Hampshire Fire Insurance Co.*, 2 T. C. 708, in support of his position. The facts here present, however, are quite different from the facts in the cited cases, and they do not call for application of the rule of those cases.

The instant question would probably not have arisen had it not been for the erroneous bookkeeping entries and description of the transaction in the corporate minute books. It is well settled, however, that, where book entries are found to be at variance with the facts, decision must rest on the facts. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. Riddlesbarger was the dominant and controlling personality in the affairs of both the parent company and the petitioner. The directors were only salaried employees, who ordinarily followed his directions in exercising their functions. He testified that he intended to purchase the securities in the first instance for the account of the petitioner, using funds which the parent company owed the petitioner. We see no reason to disbelieve his testimony, particularly when it is supported by other evidence more or less contemporaneous with the transaction and before the taxing authorities raised any question with respect thereto.

Being away at the time the securities were delivered, Riddlesbarger gave no instructions to the bookkeeper or others with respect to recording the ownership of the securities; and the book entries did not come to his attention until some time in December 1937. The book entries of December 31, 1937, do not amount to a sale of the securities from the parent company to the petitioner at that time. They were made for the purpose of correcting the erroneous recording of the ownership of the securities at the time of their original acquisition. There is nothing in the record to suggest any purpose to shift deductions from one corporation to another closely related corporation so as to gain a tax advantage. As a matter of fact, it is stipulated that the parent company in the taxable year had taxable net income of over $38,000—more than enough to cover the entire loss on the securities.

We hold that petitioner's basis on the securities was the original cost of $61,514.18, and petitioner is accordingly entitled to the full deduction claimed.

The second issue is whether petitioner is entitled to deduct the net operating expenses of the Arizona ranch property in 1941 and 1942. In support of his disallowance of such expenses, respondent takes the position that the ranch was operated for the personal convenience or accommodation of Riddlesbarger. In our opinion that is only partially the case. The evidence convinces us that one of the purposes in the acquisition of the ranch was to obtain a source of supply for the

hormone raw material, with the expectation of eventually engaging in the manufacture and sale of hormone preparations.

Petitioner had already begun research and experiments in the hormone field before the ranch was bought, and it was difficult at that time to obtain the raw material in commercial quantities. The hormone product was a logical addition to the petitioner's line of merchandise, and the endeavor to develop a source of raw material supply was a legitimate object of the petitioner's business. The investment in the better types of horses would also seem to be justifiable on the petitioner's part by reason of the fact that their offspring brought much higher prices than the ordinary types, with the resultant possibility that profits from the sale of the natural increase in the inventory of horses might help defray the operating expenses of the ranch. So, we think that whatever expenses were proximately or directly related to the hormone project should be deductible as ordinary and necessary business expenses.

It is true, of course, that the petitioner's hormone project did not meet with the anticipated success. But the failure to realize the hopes therefor is sufficiently explained by the difficulties which petitioner met in the course of the project—among them the patent complications and particularly the advent on the market of a synthetic product which was much cheaper.

On the other hand, we can not agree with the petitioner's contention that Riddlesbarger did not live on the ranch for pleasure, but only because it was necessary for someone to be there and supervise the operations. It can hardly be thought ordinary and necessary for petitioner to go to the extent it did in landscaping and in constructing imposing dwellings and other buildings, a golf course, extensive utilities, and the like, in order to develop its source of supply for hormones. We do not think other corporations having a similar business purpose, but not so subservient to the will of one man, would have made such elaborate investments to provide an overseer with sumptuous living accommodations. In the circumstances of this case, where Riddlesbarger undeniably was the dominant figure in the affairs of both the parent company and the petitioner, little if any weight should be given to the rental he paid the petitioner. Certainly the mere fact that rent was paid should not be taken here as conclusively establishing that expenditures which primarily inured to Riddlesbarger's benefit did not exceed the amount of the rental.

We have not overlooked, but we are not greatly impressed with, the testimony as to other motives of the petitioner in acquiring the ranch, such, for example, as the hope of acquiring additional adjoining land

in Arizona and the development of a resort area, and the purpose of holding meetings of the petitioner's employees at the ranch; nor can we see the particular relevancy of such alleged purposes to the petitioner's ordinary business.

We are satisfied that not all of the petitioner's expenditures at the ranch in the taxable years had that proximate or direct relation to its business which would justify their deduction as ordinary and necessary expenses. But it clearly appears to us that some of the expenses incurred had a legitimate connection with petitioner's business and should be allowed.

While the state of the record is such that an exact allocation of the total expenditures as between personal and business is hardly possible, it does provide the basis for a reasonable approximation. The stipulated facts show a partial breakdown of the various items of expense incurred. They also show a partial breakdown of the total investments of petitioner in the ranch assets, from which it appears, in conjunction with other evidence of record, that the relative investment in physical assets of the kind inuring primarily to Riddlesbarger's benefit and enjoyment was larger than that in the physical assets more directly connected with the business.

As best we could in the circumstances, we have determined and set out in our findings the amounts of expenses which we consider as primarily of a personal or nonbusiness nature and, therefore, not allowable deductions as ordinary or necessary business expenses. We have likewise made findings of the amounts which we think petitioner is entitled to deduct because of their direct or proximate relation to its business. In making such determination, we have in general treated the pasture and range expense and horse and cattle camp expense as being mainly of a business nature, and the buildings and grounds expense and maintenance as largely personal. The other items of expense we have apportioned or allocated between the two categories, having in mind the relative investments of the petitioner in nonbusiness and business assets at the ranch. We have also taken account of the fact that petitioner was in part reimbursed for the nonbusiness expenses by the rentals which Riddlesbarger paid and which it took into its income; and we have accordingly made appropriate adjustments therefor, the net effect of which is to take the rentals out of the income account and equal amounts of expenses out of the expense accounts. After such adjustments, the net amounts of petitioner's unreimbursed personal or nonbusiness expenses are disallowed as deductions.

*Decision will be entered under Rule 50.*