WILLIAM WOOD AND LOIS WOOD, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20039-87.      Filed July 31, 1989.

*Joseph G. Kinder,* for the petitioners.
*Michael P. Breton,* for the respondent.

RUWE, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1983 in the amount of $12,143.92 and an addition to tax under section 6661[1] in the amount of $3,035.98. In his reply brief, respondent has waived the addition to tax under section 6661.

The issues for decision are: (1) Whether a portion of the lump-sum distribution received in 1983 from a profit-sharing fund is includable in gross income for 1983, and (2) whether respondent's motion for leave to amend the answer and to conform the pleadings to the proof and for increased deficiency should be granted.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners William and Lois Wood resided in Warwick, Rhode Island, when they filed their petition in this case.

William Wood (hereinafter petitioner) retired from employment with Sears, Roebuck & Co. (hereinafter Sears) in 1983 at age 63. Petitioner had been actively employed by Sears for 33 years. Two years prior to his retirement, petitioner suffered a heart attack and was on disability leave thereafter until he retired.

On July 14, 1983, petitioner received a lump-sum distribution in the amount of $79,516.60 from the Savings and Profit Sharing Fund of Sears Employees. The distribution consisted of $37,662.54 in cash and 1,994 shares of Sears stock with an average aggregate cost of $20.99 per share, or $41,854.06 in the aggregate. Eleven thousand two hundred thirty-eight dollars and eighty-two cents of the distribution was attributable to voluntary deposits made by petitioner and was not taxable upon distribution.

The manager of the Sears store where petitioner had worked personally delivered to petitioner a check and stock certificates constituting the entire lump-sum distribution. The store manager advised petitioner to make sure that the lump-sum distribution was "rolled over" within 60 days. Section 405(a)(5) generally provides that a lump-sum distribution that is transferred to another eligible retirement account within 60 days will not be included in taxable income. The 60-day period for rollover treatment on petitioner's lump-sum distribution expired on September 12, 1983.

Petitioner wanted to roll over the distribution into an individual retirement rollover account (hereinafter IRA rollover account). He contacted Merrill Lynch regarding the rollover, and was referred to an account executive. Petitioner already had an account with Merrill Lynch which was known as the Merrill Lynch Ready-Asset Security Account (the Ready-Asset account) and had previously dealt with the same account executive. The account number of this account was 867 79549. Petitioner met with the account

executive in order to open an IRA rollover account with Merrill Lynch. At this meeting, petitioner signed documents to establish his IRA rollover account. Petitioner instructed the account executive to deposit the lump-sum distribution check and stock certificates into his IRA rollover account. Petitioner physically delivered the lump-sum distribution check and stock certificates to the account executive at that time. Petitioner was assured by the account executive that the rollover would be carried out.

The records of Merrill Lynch show that petitioner's lump-sum distribution check and stock certificates were deposited to his Ready-Asset account on August 12, 1983, and August 17, 1983, respectively. The Merrill Lynch account statement records these transactions as follows:

Ready-Asset Account No. 867 79549

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| * * * | | | | |
| 08 12 | FUNDS RECEIVED | FUNDS RECEIVED | | $37662.54CR |
| * * * | | | | |
| 08 17 | RECEIVED | 1994 SEARS ROEBUCK | | |

The records of Merrill Lynch show that petitioner's IRA rollover account was set up on August 26, 1983, as account number 867 88714. The Merrill Lynch account statement records this transaction as follows:

IRA Rollover Account No. 867 88714

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 08 26 | | SET UP FEE | | $30.00 |
| 08 26 | CLOSING BALANCE | | | $30.00DR |

The records of Merrill Lynch show that on September 8, 1983, $26,423.18 was transferred from petitioner's Ready-Asset account to petitioner's IRA rollover account. This amount represents the taxable portion of the cash lump-sum distribution.[2] The Merrill Lynch account statements record this transaction as follows:

---

[2]There is an unexplained $.54 discrepancy. The total cash distribution, $37,662.54, minus the nontaxable portion of the cash distribution, $11,238.82, equals $26,423.72. The parties have stipulated, however, that the portion of the cash distribution which was rolled over is $26,423.18.

Ready-Asset Account No. 867 79549

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|-------|--------|
| * * * | | | | |
| 09 08 | WITHDRAWAL | CHECK H | | $26423.18 |

IRA Rollover Account No. 867 88714

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|-------|--------|
| * * * | | | | |
| 09 08 | FUNDS RECEIVED | ROLLOVER DEPOSIT | | $26423.18CR |

The Merrill Lynch records do not show any other deposits or transfers to petitioner's IRA rollover account prior to the expiration of the 60-day rollover period that expired on September 12, 1983.

The first monthly IRA account statement received by petitioner after the expiration of the 60-day rollover period on September 12, 1983, was dated September 30, 1983. This statement and succeeding monthly statements through December 1983 indicated that the 1,994 shares of Sears stock had not been transferred into petitioner's IRA account. Petitioner failed to recognize this.

The Merrill Lynch records for January 1984 pertaining to petitioner's two aforementioned accounts reflect that the 1,994 shares of Sears stock that petitioner had received as a lump-sum distribution were transferred from his Ready-Asset account to his IRA rollover account. The Merrill Lynch account statements for January 1984 record this as follows:

Ready-Asset Account No. 867 79549

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|-------|--------|
| * * * | | | | |
| 01 27 | JOURNAL ENTRY | 1994 SEARS ROEBUCK ROLLOVER DEP VS 8678 8714 | | |

IRA Rollover Account No. 867 88714

| DATE | TRANSACTION | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|-------|--------|
| * * * | | | | |
| 01 27 | JOURNAL ENTRY | 1994 SEARS ROEBUCK ROLLOVER DEP VS 8677 9549 | | |

Subsequent to December 1983, the Merrill Lynch monthly statements for petitioner's IRA account reflected that the 1,994 shares of Sears stock had been rolled over to the IRA account.

Petitioner did not become aware of a problem with respect to the timely rollover of his stock until the Internal Revenue Service questioned his failure to report the lump-sum distribution on his 1983 return. Petitioner signed his 1983 return on March 15, 1984, and it was timely filed.

The January 27, 1984, journal entries on the Merrill Lynch account statements reflecting the transfer of 1,994 shares of Sears stock to petitioner's IRA rollover account were not made at petitioner's request or initiative.

Petitioners did not report the taxable distribution of $68,277.78 on their 1983 Federal income tax return.

In his notice of deficiency, respondent determined that the entire taxable portion of the distribution from the Sears plan was includable in petitioners' income for 1983. The notice of deficiency determined that $18,318 was taxable as ordinary income and $49,959 was taxable as capital gain. These are the amounts which Sears reported to respondent on Form 1099R. The notice of deficiency failed to recognize that any portion of the distribution had been properly rolled over. At the commencement of the trial, the parties submitted a Stipulation of Facts in which they agreed that $26,423.18 of the taxable distribution had been properly rolled over into an IRA rollover account.

During his opening statement at the trial, respondent orally moved to amend the answer and to conform the pleadings to the proof and for increased deficiency. The request for an increased deficiency was based upon the assertion that petitioner's failure to roll over the entire distribution requires that the portion which was not rolled over be treated as ordinary income. We denied the oral motion and recommended that respondent file a written motion if he wished to pursue the matter. On June 6, 1988, respondent filed a written motion for leave to amend the answer and to conform the pleadings to the proof and for an increased deficiency pursuant to Rule 41(b).

## OPINION

Generally, the taxable portion of a distribution from a qualified employees' trust is taxable in the year of receipt.

Sec. 402(a)(1).[3] Section 402(a)(5)(A) provides for an exception to the general rule of section 402(a)(1) where the distribution, or a portion of the distribution, is transferred to an eligible retirement plan, such as an individual retirement account (IRA).[4] In order to receive the special treatment of section 402(a)(5)(A), the transfer must be made within 60 days following receipt of the distribution. Sec. 402(a)(5)(C).[5]

In this case, the 60-day period to roll over the distribution expired on September 12, 1983. Neither the Code nor the regulations provides relief from taxation where amounts are distributed from a qualified plan but not timely rolled over. See S. Rept. 95-1127 (1978), 1978-2 C.B. 369; H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236; S. Rept. 93-127 (1973), 1974-3 C.B. (Supp.) 1; S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80. See also *Tassinari v. Commissioner*, T.C. Memo. 1984-445; *Smithsi v. Commissioner*, T.C. Memo. 1981-652; *Handy v. Commissioner*, T.C. Memo. 1981-411.

The issue presented by this case is whether the actions taken by petitioner and Merrill Lynch constitute a transfer of petitioner's entire lump-sum distribution to his IRA rollover account within the required 60-day period. That 60-day period ended on September 12, 1983. It is apparent

---

[3]Sec. 402(a)(1) provides:

SEC. 402(a). TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.—Except as provided in paragraphs (2) and (4), the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities). The amount actually distributed to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee (other than deductible employee contributions within the meaning of section 72(o)(5)). Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary.

[4]Sec. 402(a)(5)(A) provides:

(A) GENERAL RULE.—If—
(i) the balance to the credit of an employee in a qualified trust is paid to him in a qualifying rollover distribution,
(ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
(iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

[5]Sec. 402(a)(5)(C) provides:

(C) TRANSFER MUST BE MADE WITHIN 60 DAYS OF RECEIPT.—Subparagraph (A) shall not apply to any transfer of a distribution made after the 60th day following the day on which the employee received the property distributed.

that the only reason this case is before the Court is that the monthly statements generated by Merrill Lynch for the 4 months of September through December 1983 indicate that only a partial transfer had occurred by September 12, 1983.

Respondent's position is that the Merrill Lynch records control the question of whether or not the Sears stock was transferred to the IRA rollover account within the required 60 days. It has been held, however, that bookkeeping entries "are no more than evidential, being neither indispensable nor conclusive. The decision must rest upon the actual facts * * * ." *Doyle v. Mitchell Brothers Co.*, 247 U.S. 179, 187 (1918). The substance of a transaction must be determined from the facts surrounding the transactions rather than from bookkeeping entries. See, e.g., *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497, 832-833 (1980); *Comtel Corp. v. Commissioner*, 45 T.C. 294, 304-305 (1965), affd. 376 F.2d 791 (2d Cir. 1967). In determining the substance of the transactions in issue, we examine the relationship between petitioner and Merrill Lynch.

Petitioner and Merrill Lynch obviously entered into a contractual relationship when the documents establishing the IRA rollover account were executed in 1983. While those documents were not introduced as evidence, it was stipulated that petitioner's IRA rollover account was established and satisfied the requirements of the Code. At the time petitioner signed the required documents, he instructed the account executive that he wanted to roll over the entire taxable portion of his lump-sum distribution from the Sears plan. Thereupon, petitioner delivered the check and stock certificates to the account executive who assured petitioner that it would be done.

Neither party called the Merrill Lynch account executive or any other representative of Merrill Lynch to explain what occurred thereafter. However, it is clear from the evidence that the check and stock were first recorded as deposited into petitioner's Ready-Asset account, then the IRA rollover account was established on the Merrill Lynch records and finally the cash portion of the lump-sum distribution (less petitioner's voluntary contributions) was recorded as transferred from the Ready-Asset account to

the IRA account. This was all done in conformity with the agreement between petitioner and Merrill Lynch prior to the expiration of the 60-day period.

It is undisputed that the Merrill Lynch records for the months of September through December 1983 indicate that the portion of petitioner's lump-sum distribution consisting of 1,994 shares of Sears stock was not placed into the IRA account within the required 60 days. However, if this is determined to be attributable to a mere bookkeeping error that failed to properly reflect the transaction, it will not control the resolution of this case. It is well settled that where book entries are at variance with the facts, the decision must rest on the facts. *Dean v. Commissioner*, 57 T.C. 32, 44 (1971); *Kaplan v. Commissioner*, 21 T.C. 134, 140 (1953); *Lanteen Medical Laboratories, Inc. v. Commissioner*, 10 T.C. 279, 288 (1948); *Elkins v. Commissioner*, 12 B.T.A. 1058 (1928). It follows that a bookkeeping error does not alter the rights and responsibilities between parties to a transaction.

We have found petitioner's testimony concerning the instructions which he gave to the Merrill Lynch account executive and the account executive's agreement to those instructions to be credible. We therefore find that Merrill Lynch, as trustee of the admittedly valid IRA rollover account, had accepted petitioner's Sears stock for deposit to the IRA rollover account and held the stock subject to the IRA trust instrument. We also find that Merrill Lynch's failure to record the transfer of petitioner's 1,994 shares of stock to the IRA account within the required 60 days is nothing more than a bookkeeping error. This is corroborated by the entries on Merrill Lynch's records. On the January 1984 statements regarding petitioner's accounts, journal entries were made to reflect that the 1,994 shares of Sears stock were actually in the IRA rollover account. Merrill Lynch's January statement for the IRA rollover account contains the following description: "JOURNAL ENTRY 1994 SEARS ROEBUCK ROLLOVER DEP VS 8677 9549."[6] When this entry is juxtaposed next to the entries recording the original receipt of the lump-sum distribution check and stock in the Ready-Asset account ("FUNDS RECEIVED" and

---

[6]Account 8677 9549 is the number of the Ready-Asset account.

"RECEIVED 1994 SEARS ROEBUCK") and the entries reflecting the transfer of the cash to the IRA rollover account ("FUNDS RECEIVED ROLLOVER DEPOSIT"), we are led to conclude that Merrill Lynch was simply correcting a bookkeeping error in January 1984. It would appear that when an entry was intended to reflect an actual transfer, as opposed to a correcting entry, the term "received" was used. Our conclusion that the failure to record the stock transfer in September was a bookkeeping error is solidified by the fact that Merrill Lynch apparently made the January 1984 "journal entry" on its own initiative since petitioner did not become aware of the problem until much later when respondent began his audit of petitioner's 1983 return.

Despite the fact that petitioner took reasonable steps to establish an IRA rollover account and transfer the lump-sum distribution to that account in a timely manner, respondent argues that petitioner selected Merrill Lynch and is therefore bound by Merrill Lynch's bookkeeping error. As previously indicated, we believe that the substance of the transaction is controlled by what occurred between petitioner and Merrill Lynch. Respondent has not cited, and we have not found, any indication in the statute, legislative history, or case law that Congress intended to deny rollover benefits to taxpayers on the basis that a financial institution or other qualified IRA trustee made a mistake in recording a transaction.

Respondent finally argues that petitioner should be entitled to no relief from Merrill Lynch's mistake because petitioner did nothing to correct the mistake even though he received several monthly statements which should have alerted him to the fact that something was wrong. We find this to be a non sequitur. The admittedly proper partial rollover was recorded on September 8, 1983. The 60-day rollover period expired on September 12, 1983. The first monthly statement after these events was for the period ended September 30, 1983. If petitioner had failed to actually transfer the lump-sum distribution to the IRA rollover account by September 12, 1983, it would have made absolutely no difference whether he had realized this on September 30, 1983, and attempted to take remedial action.

In light of our disposition of the principal issue, respondent's motion for leave to amend the answer in which he asks for an increased deficiency has become moot.

*An appropriate order will be issued and decision will be entered under Rule 155.*