T.C. Memo. 2002-171

UNITED STATES TAX COURT

J. KELLY ANDERSON AND MARTHA L. ANDERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10760-00.                    Filed July 19, 2002.

<u>Joe K. Gordon</u>, for petitioners.

<u>Denise G. Dengler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:   Petitioners petitioned the Court to
redetermine respondent's determination of a $63,949 deficiency in
their 1997 Federal income tax.  We must decide whether
petitioners' 1997 taxable income should include the $200,000
distribution that J. Kelly Anderson (Mr. Anderson) received from
his individual retirement account (IRA) and reported as

nontaxable on his tax return.  We hold it does.  Unless otherwise indicated, section references are to applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Many facts were stipulated, and we incorporate by this reference the parties' stipulation of facts and the accompanying exhibits.  Mr. Anderson and Martha L. Anderson (Mrs. Anderson) are husband and wife, and they filed a joint 1997 Federal income tax return.  They resided in Fort Worth, Texas, when their petition was filed with the Court.  Mr. Anderson was born in 1932 and holds a bachelor's degree in commerce.

In 1993, Mr. Anderson retired from General Dynamics.  In June 1994, Mr. Anderson rolled over $217,847.83 of his funds in the General Dynamics Salaried Employee Plan to an IRA account with National Financial Services Corporation (NFSC).  Before establishing the account with NFSC, an NFSC portfolio representative explained to Mr. Kelly the significance of an IRA, including its investment options.  Mr. Kelly's application for the account with NFSC stated at the top that it was an "IRA Account Application".

On June 2, 1997, Mr. Anderson closed his IRA account with NFSC by withdrawing the balance of $200,688.97; he closed the

account to secure a higher interest rate.[1] On the withdrawal form, Mr. Anderson checked the box for normal distribution but handwrote "rollover" in the same section. Upon receipt of the check, Mr. Anderson went to Northwest National Bank of Arlington (Arlington) and stated that he wanted to open an account with his IRA check.[2] The new accounts representative at Arlington advised Mr. Anderson that he might want to open up two accounts, one for himself and one for his wife, in order to maximize the insurance coverage of the Federal Deposit Insurance Corporation (FDIC) on their accounts.[3] With the proceeds of his IRA check, Mr. Anderson purchased from Arlington a 1-year, $100,000 Certificate

---

[1] Each year, Mr. Anderson had withdrawn the income earned on the account. The record does not explain the $17,158.86 difference between the deposited funds and the withdrawn balance.

[2] Although petitioners testified summarily that they specifically asked the representative to open an IRA account for them, we find this testimony unbelievable in light of the record as a whole. We decline to rely on that naked, self-serving testimony for the purpose of reaching our decision herein. See Commissioner v. Duberstein, 363 U.S. 278, 291 (1960); Casperone v. Landmark Oil & Gas Corp., 819 F.2d 112, 115 (5th Cir. 1987); Diamond Bros. Co. v. Commissioner, 322 F.2d 725, 731 (3d Cir. 1963), affg. T.C. Memo. 1962-132. Petitioners could have, but did not, call as a witness the representative of the bank to testify as to her memory of the conversation. (Mrs. Anderson testified that the bank president disputed petitioners' claim that the bank had erroneously not opened an IRA account.) We also note, as described infra, that Mr. Andersen is a college-educated man who we believe would have noticed that the application opening the account was not in the name of an IRA nor was creating a trust account.

[3] The representative advised Mr. Anderson that the FDIC insured each account of a depositor up to a maximum of $100,000.

of Deposit Special in his name and caused Mrs. Anderson to purchase from Arlington a 1-year, $100,000 Certificate of Deposit Special in her name. Although a box appeared on the applications to create a trust account, neither of the applications for the purchases nor the actual certificates of deposit mention the creation of a trust account or an IRA. Neither petitioner ever opened a trust account or an IRA account of Arlington, and none of the $200,688.97 was ever rolled over into a trust account or an IRA account.

NFSC issued to Mr. Anderson a Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, Etc., reporting a gross taxable distribution of $205,298. On petitioners' 1997 tax return, they reported a total IRA distribution of $205,298 but that only $5,298 was taxable. On July 21, 2000, respondent mailed to petitioners a notice of deficiency for the tax on the remaining $200,000 of the distribution.

## OPINION

We must decide whether petitioners are taxable in 1997 on their receipt of the remaining $200,000 of IRA funds.[4]

---

[4] Our decision does not depend on which party has the burden of proof. We note in passing, however, that petitioners do not argue that sec. 7491(a) places the burden of proof on the Commissioner here. We also note that Mr. Anderson was of a permissible age to receive the distribution without a tax. Sec. 72(t). Thus, respondent did not determine that Mr. Anderson was subject to the 10-percent tax for early distribution.

Generally, a distribution from an IRA is includable in an individual's gross income in the year in which the distribution in received. Sec. 408(d); see sec. 1.408-4(a), Income Tax Regs.; see also <u>Schoof v. Commissioner</u>, 110 T.C. 1, 7 (1998); <u>Gallagher v. Commissioner</u>, T.C. Memo. 2001-34. A distribution may be tax-exempt if the funds distributed from an IRA to the individual for whose benefit the account is maintained are rolled over to another IRA for the benefit of such individual, provided certain criteria are met. Sec. 408(d)(3)(A). Those criteria are:

> (i) the entire amount received (including money and any other property) is paid into an individual retirement account or individual retirement annuity (other than an endowment contract) for the benefit of such individual not later than the 60th day after the day on which he receives the payment or distribution;

> (ii) no amount in the account and no part of the value of the annuity is attributable to any source other than a rollover contribution (as defined in section 402) from an employee's trust described in section 401(a) which is exempt from tax under section 501(a) or from an annuity plan described in section 403(a) (and any earnings on such contribution), and the entire amount received (including property and other money) is paid (for the benefit of such individual) into another such trust or annuity plan not later than the 60th day on which the individual receives the payment or the distribution; or

> (iii)(I) the entire amount received (including money and other property) represents the entire interest in the account or the entire value of the annuity,

> > (II) no amount in the account and no part of the value of the annuity is attributable to any source other than a rollover contribution from an annuity

contract described in section 403(b) and any earnings on such rollover, and

(III) the entire amount thereof is paid into another annuity contract described in section 403(b) (for the benefit of such individual) not later than the 60th day after he receives the payment or distribution.

Petitioners admit that they did not satisfy any of these requirements to properly roll over Mr. Anderson's IRA funds into another IRA.[5] Instead, petitioners argue that the failure to satisfy the requirements of section 408(d)(3)(A) were caused by errors committed by Arlington, which should not be held against petitioners. To support this argument that we should ignore the failure to satisfy the literal requirements of the Code, petitioners rely primarily upon Wood v. Commissioner, 93 T.C. 114 (1989).

In Wood, the taxpayer consulted Merrill Lynch to effectuate a rollover of a distribution from his IRA. Id. at 115. The taxpayer signed the requisite documents to establish the IRA, Merrill Lynch opened a valid IRA account for the taxpayer, and Merrill Lynch recorded the deposit of the cash contribution as a deposit into the IRA account. Id. at 116-117, 120. By virtue of a bookkeeping error on the part of Merrill Lynch, Merrill Lynch

---

[5] The Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 644(b), 115 Stat. 123, added sec. 408(d)(3)(I) to the Code effective for distributions after Dec. 31, 2001. That section allows the Commissioner to waive the 60-day deadline in the name of equity or good conscience. By reason of its effective date, that provision is inapplicable here.

erroneously credited the transfer of the IRA funds to a non-IRA account.  Id. at 117.  The Court held that Merrill Lynch's bookkeeping error did not disqualify the taxpayer's transfer of his IRA funds as a valid IRA rollover.  Id. at 122. The Court stated that Congress did not intend "to deny rollover benefits to taxpayers on the basis that a financial institution or other qualified IRA trustee made a mistake in recording a transaction." Id. at 122.

We believe that the case of Wood is factually distinguishable from the instant case.  Whereas the taxpayer in Wood established a valid IRA, Mr. Anderson never established, nor instructed the bank officer to establish, a valid IRA (or trust) account with Arlington in which the transferred IRA funds could have been deposited.  Additionally, unlike Wood, which involved "procedural defects in the execution of the rollover", the case here, as was true in Schoof v. Commissioner, supra at 11, "involves the failure of a fundamental element of the statutory requirements for an IRA rollover contribution".  Mr. Anderson's failure is that he never created an IRA trust in which the transferred funds could be placed.

Lastly, unlike the taxpayer in Wood, petitioners did not exercise the necessary due diligence in creating an IRA account. We note in this regard that Mr. Anderson is a business-minded, college-educated man who we believe (on the basis of our

observation of him during his testimony) would have (or at least should have through minimal diligence) noticed the fact that the Arlington accounts were in his and his wife's names rather than the name of a trust or an IRA.  Mr. Anderson also has rolled over his IRA once before.  His writing of "rollover" on his withdrawal form also demonstrates his awareness of the need to roll over the distribution into an eligible account.

We have considered all arguments and find those not discussed herein to be without merit.  Accordingly,

<u>Decision will be entered</u>

<u>for respondent.</u>