T.C. Memo. 2010-146

UNITED STATES TAX COURT

PEGGY ANN SEARS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12454-08.            Filed July 6, 2010.

Peggy Ann Sears, pro se.

<u>John W. Strate</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a $6,093.70 deficiency in petitioner's 2006 Federal income tax.  Petitioner filed a timely petition contesting respondent's determination.  The sole issue for decision is whether distributions from petitioner's individual retirement accounts (IRAs) qualify for the exception from the 10-percent additional tax on early distributions under

section 72(t)(2)(A)(ii)[1] as distributions to a beneficiary after the death of an employee. We hold that the distributions are subject to the additional tax.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations are incorporated herein by this reference. Petitioner resided in California when she filed her petition.

Petitioner's husband, John H. Sears (Mr. Sears), died on August 28, 1998. Before his death he maintained an IRA at Morgan Stanley. Mr. Sears' IRA account number ended in 7189 (account No. 7189). Petitioner was the primary beneficiary of account No. 7189.

For at least part of 1999 petitioner had an IRA rollover account at Morgan Stanley with an account number ending in 9853 (account No. 9853). As of the end of February 1999, account No. 9853 had a zero balance. On March 2, 1999, $30 was deposited in account No. 9853, and Morgan Stanley applied it as a custody fee. On March 24, 1999, Morgan Stanley transferred securities valued at $442,863.87 from account No. 7189 to account No. 9853 (March 1999 transfer). As of March 31, 1999, account No. 7189 had assets with a total value of $311,674.62.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On April 26, 2002, petitioner designated two primary beneficiaries for account Nos. 9853 and 7189. To do so, she signed a Morgan Stanley Traditional IRA Amendment Agreement (amendment agreement) with respect to each account.[2]

As of 2005 petitioner maintained an account at Morgan Stanley ending with 9860 (account No. 9860), which was a living trust account. On May 24, 2005, petitioner signed two "IRA Distribution Request Form Periodic/on Demand Payment Request" forms (distribution request forms) directing on-demand distributions from account No. 7189 to account No. 9860 in variable amounts to be determined by petitioner for each payment.[3] On June 13, 2005, petitioner signed a distribution request form directing monthly distributions of $1,370 from account No. 9853 and requesting that the distributions be credited to account No. 9860. In September 2005 petitioner made her last withdrawal from account No. 7189 in the amount of $338.03, thereby depleting the funds in that account. Besides the March 1999 transfer, between 1999 and September 2005

_____

[2]The parties' stipulation 18 states that Exhibit 14-J is a copy of the amendment agreement for account No. 9853. Because the exhibit is a copy of the amendment agreement with respect to account No. 7189, we treat it as such.

[3]The parties' stipulation 19 states that one of the distribution request forms directed a gross distribution of $5,000. Because the relevant exhibit indicates that petitioner directed variable distributions in amounts to be determined by her for each payment, we ignore the statement in stipulation 19 insofar as it is inconsistent with the terms of the exhibit.

petitioner withdrew $443,230.92 from account No. 7189.[4]  On May 31, 2006, petitioner signed a distribution request form with respect to account No. 9853 requesting distributions in amounts to be determined by her for each payment and directing Morgan Stanley to deposit the amounts in account No. 9860.

In addition to account Nos. 9853, 9860 (the living trust account), and 7189 (Mr. Sears' IRA account), petitioner also maintained at Morgan Stanley IRA accounts with numbers ending in 8052 (account No. 8052) and 9052 (account No. 9052).[5]  On September 29, 2006, petitioner signed a distribution request form directing a distribution of $1,500 from account No. 8052 to account No. 9860.  Unlike the other distribution request forms, the September 29, 2006, distribution request form indicated the distribution was premature and no exception applied.  During 2006

---

[4]Besides the March 1999 transfer, petitioner's withdrawals from account No. 7189, were as follows:

| Year | Withdrawal amount |
|------|-------------------|
| 1999 | $67,800.00 |
| 2000 | 96,675.00 |
| 2001 | 57,981.17 |
| 2002 | 57,248.65 |
| 2003 | 59,164.44 |
| 2004 | 68,233.89 |
| 2005 | 36,127.77 |

The amounts of the withdrawals include Federal and State tax withholdings.

[5]The record does not disclose how petitioner funded those accounts.

petitioner received distributions totaling $60,937 as follows: $24,689 from account No. 8052, $18,809 from account No. 9853,[6] and $17,439 from account No. 9052.[7] In 2006 petitioner was not yet 59-1/2 years old.

Petitioner filed her 2006 Form 1040, U.S. Individual Income Tax Return, electronically.[8] Petitioner's accountant, Don Vance (Mr. Vance), prepared petitioner's 2006 return. Petitioner reported $60,937 in distributions from her IRAs but did not report the 10-percent additional tax pursuant to section 72(t) for an early withdrawal from an IRA. Respondent adjusted petitioner's tax by adding 10 percent of the total distributions on the ground that petitioner had not reached age 59-1/2 in 2006

---

[6]The parties stipulated that the distribution of $18,809 was from an account with a number ending in 3052 (account No. 3052). Respondent explains on brief that Morgan Stanley uses three sets of digits for account numbers. The last three-digit set identifies the financial adviser handling the account. Respondent also states that account No. 3052 is the same as account No. 9853. Petitioner does not disagree with respondent's explanation. The jointly stipulated summary of accounts for March 2009 also suggests that account No. 3052 is the same as account No. 9853. Accordingly, we refer to account No. 3052 as account No. 9853.

[7]According to petitioner, she had been receiving distributions from the IRAs since Mr. Sears' death in 1998, but respondent, Morgan Stanley, and petitioner's accountant, Don Vance, never identified issues with the distributions. Respondent determined additional tax for 2006 only.

[8]The record does not disclose whether petitioner filed the 2006 return timely.

and no other exception to the additional tax under section 72(t) applied.

OPINION

I.  <u>Petitioner's Argument</u>

During 2006 petitioner received premature distributions from three IRA accounts, Nos. 9853 ($18,809), 8052 ($24,689), and 9052 ($17,439), that she owned and maintained at Morgan Stanley. Although petitioner authorized the distributions, petitioner appears to argue that the distributions should not be subject to the additional tax under section 72(t) because the exception under section 72(t)(2)(A)(ii) applies.  As we understand petitioner's position, which petitioner never clearly explained, petitioner is alleging in effect that the assets in account No. 9853 were transferred from her deceased husband's IRA account No. 7189 to account No. 9853 in 1999 without her authorization and that the 2006 distributions from account No. 9853 should have been treated as distributions to her as the beneficiary of her deceased husband's IRA.[9]

---

[9]Petitioner does not claim that the 2006 distributions from her other IRA accounts, Nos. 8052 and 9052, came from assets transferred from her deceased husband's IRA by mistake.  In fact, there is no credible evidence that any assets from her deceased husband's IRA account No. 7189 were ever transferred to account Nos. 8052 and 9052.  Consequently, we interpret petitioner's argument for relief under sec. 72(t)(2)(A)(ii) as a request for partial relief that relates only to the 2006 distributions from her account No. 9853.

Generally, the Commissioner's determination in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that section 7491(a) shifts the burden of proof to respondent, nor does the record establish that petitioner satisfies the requirements of section 7491(a)(2).

## II. Burden of Proof and Production

Section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any taxpayer for any penalty, addition to tax, or additional amount imposed by the Code. To satisfy his burden of production under section 7491(c), the Commissioner must produce evidence that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, section 7491(c) does not require the Commissioner to introduce evidence regarding reasonable cause. Id.

We do not need to address whether additional tax under section 72(t) is an amount to which section 7491(c) applies. Even if the burden of production with respect to the additional tax is on respondent, respondent has met it by showing that the distributions in 2006 were not from account No. 7189. Consequently, petitioner has both the burden of producing evidence to show that the 2006 distributions from account No.

9853 are not subject to the additional tax under section 72(t) and the burden of proving that respondent's determination is incorrect. See Rule 142(a)(1).

III. Analysis

Generally, amounts distributed from an IRA are includable in gross income as provided in section 72. Sec. 408(d)(1). Section 72(t)(1) provides for a 10-percent additional tax on early distributions from qualified retirement plans, unless the distribution falls within a statutory exception. The relevant exception is section 72(t)(2)(A)(ii), which provides that distributions "made to a beneficiary (or to the estate of the employee) on or after the death of the employee" are not subject to the 10-percent additional tax.

We have previously held that the beneficiary loses the ability to claim the exception under section 72(t)(2)(A)(ii) if the beneficiary rolls over the funds from the deceased spouse's IRA into his or her IRA and thereafter withdraws funds from the IRA. See Gee v. Commissioner, 127 T.C. 1, 4-5 (2006). In Gee v. Commissioner, supra at 4-5, we held that when a beneficiary rolls over funds from the deceased spouse's IRA, the funds become the beneficiary's own and any subsequent distributions are no longer occasioned by the death of the spouse. Thus, such distributions do not qualify for the section 72(t)(2)(A)(ii) exception. See id.

With respect to distributions from account No. 9853, the record contains statements for account Nos. 7189 and 9853 for March 1999.  An entry dated March 24, 1999, in the statement for account No. 7189 is titled "Securities Delivered -442,863.87".  The March 1999 account statement for account No. 9853 shows that on March 24, 1999, account No. 9853 received securities valued at $442,863.87.  Because securities worth $442,863.87 were transferred on March 24, 1999, from account No. 7189 to account No. 9853, i.e., from Mr. Sears' IRA to petitioner's IRA, the funds became petitioner's funds.  See id. at 4.  Accordingly, the subsequent distributions of those funds were not occasioned by the death of petitioner's husband and were not made to her in her capacity as beneficiary of his IRA.  See id.

Petitioner testified she did not remember the March 1999 transfer and did not understand rollovers.  She claimed she did not understand how the stock market works or how to read account statements.  Instead, she trusted Mr. Vance and her adviser at Morgan Stanley, and none of them "picked up on it."  She contends that Morgan Stanley made a mistake,[10] and "they were supposed to be looking out for * * * [her] interest, which, of course, they didn't."  Petitioner claims that her financial consultant at Morgan Stanley had authority over the IRAs and she would not have

_____

[10]We understand petitioner to refer to the March 1999 transfer as the relevant mistake.

discussed the asset transfer with him because she did not understand how the stock market worked.  However, petitioner's financial consultant from Morgan Stanley did not testify at trial, and because of the passage of time, the records that Morgan Stanley produced at trial did not include relevant transfer records and authorizations for the March 1999 transfer of securities from account No. 7189 to account No. 9853.[11]

The parties do not rely on and we have not found any cases discussing the application of the section 72(t)(2)(A)(ii) exception as we interpreted it in Gee v. Commissioner, supra, in cases of alleged trustee mistakes.  On brief respondent distinguishes the case at hand from cases involving trustee mistakes in another context of IRA rollovers.  In Wood v. Commissioner, 93 T.C. 114, 115 (1989), the taxpayer received a lump-sum distribution (consisting of a check and stock certificates) from his retirement account and wanted to roll over the distribution into an IRA rollover account.  The taxpayer met with an account executive at Merrill Lynch, signed the documents to establish his rollover account, and delivered the check and stock certificates to Merill Lynch, the trustee.  Id. at 115-116. The trustee records reflected the transfer of the distribution check to the IRA within the 60-day period required by section

_____

[11]Despite respondent's efforts at the Court's direction, Morgan Stanley was not able to find any such documents.

402(a)(5)(C), as in effect for 1983.[12]  See <u>Wood v. Commissioner</u>, <u>supra</u> at 116.  However, Merrill Lynch mistakenly recorded the stock certificates as having been transferred to another of the taxpayer's accounts.  See <u>id.</u> at 116-117.  Although the account statement showed that the trustee had not deposited stock in the IRA rollover account before the 60-day rollover period expired, the taxpayer did not realize the rollover was untimely until the Commissioner questioned him about the failure to report the lump-sum distribution.  <u>Id.</u> at 117-118.

In <u>Wood v. Commissioner</u>, <u>supra</u> at 120, we rejected the Commissioner's argument that the trustee's records control whether the stock was rolled over timely.  We stated that a mere bookkeeping error that failed to properly reflect the transaction does not control the resolution of the case.  <u>Id.</u> at 120-121 ("The substance of a transaction must be determined from the facts surrounding the transactions rather than from bookkeeping entries.").  Because the taxpayer took reasonable steps to establish an IRA rollover account and timely transfer the distribution, we concluded the taxpayer could claim the rollover benefits when a trustee made a mistake in recording a

---

[12]Generally, sec. 402(a) provides that the taxable portion of a distribution from a qualified employees' trust is taxable in the year of receipt.  Sec. 402(a)(5)(A) and (C), as in effect for 1983, provided for an exception from this rule if the distribution was transferred to an eligible retirement plan within 60 days following receipt of the distribution.

transaction.  Id. at 122.  In subsequent cases we have pointed out that the doctrine of substantial compliance and Wood v. Commissioner, supra, apply only to procedural defects in effecting a rollover and not to failures of a fundamental element of the statutory requirements for an IRA rollover.  See Schoof v. Commissioner, 110 T.C. 1, 10-11 (1998); Rodoni v. Commissioner, 105 T.C. 29, 38-39 (1995); Anderson v. Commissioner, T.C. Memo. 2002-171.

Respondent points out that petitioner did nothing after 1999 to correct the allegedly mistaken March 1999 transfer.  The record supports respondent's assertion.  Petitioner testified that she understood that the front page of the account statement showed the account value and value change for the period.  The record establishes that at the end of February 1999 account No. 9853 had a zero balance, but at the end of March 1999 the total asset value of account No. 9853 was $451,268.56.  Even if petitioner did not notice that account No. 7189 lost more than half of its value because of the March 1999 transfer, at some point between 1999 and 2006 petitioner should have noticed that account No. 9853 no longer had a zero balance.  Nevertheless, the record contains no credible evidence to show that petitioner inquired of Morgan Stanley whether a mistake had occurred and, if so, that she asked Morgan Stanley to correct the allegedly mistaken transfer.

We do not need to decide whether the exception from the 10-percent additional tax under section 72(t)(2)(A)(ii) applies when the transfer from the deceased employee's IRA account to the beneficiary's IRA resulted from a trustee's advice or from a lack thereof or from a mere bookkeeping error. Although the record contains no evidence of petitioner's authorization of the March 1999 transfer, on this record we are unable to conclude that the March 1999 transfer of securities to account No. 9853 was the result of a trustee or custodial mistake. Petitioner's actions after the March 1999 transfer suggest that she either authorized the transfer or subsequently ratified it. In reaching our conclusion we rely on the amendment agreements, which suggest that even before 2005 petitioner understood or should have understood that account Nos. 7189 and 9853 were different IRA accounts. Petitioner signed the two amendment agreements on separate forms on April 26, 2002, and designated the same two persons as primary beneficiaries of each account. Because petitioner signed the amendment agreements on the same day, petitioner either understood or should have understood that account Nos. 7189 and 9853 were distinct accounts.

In addition, petitioner knowingly withdrew funds from her own IRAs. The record contains two distribution request forms dated May 24, 2005, directing on-demand distributions from account No. 7189 in variable amounts to be determined by

petitioner for each payment and directing that the distributed funds be credited to account No. 9860. Approximately 3 weeks later, on June 13, 2005, petitioner signed a distribution request form directing monthly distributions of $1,370 from account No. 9853 and directing that funds be credited to account No. 9860. Even if a Morgan Stanley employee filled out the distribution forms for petitioner to sign, the short time that elapsed between the signing of the forms strongly suggests that petitioner knew the $1,370 monthly distributions were from her own account and not from account No. 7189.

In September 2005 account No. 7189 was depleted.[13] Not surprisingly, in 2006 petitioner's distribution request forms focused only on her own IRAs. On May 31, 2006, petitioner signed a distribution request form with respect to account No. 9853 requesting distributions in amounts to be determined by petitioner for each payment, and on September 29, 2006, petitioner signed a distribution request form directing a $1,500 distribution from account No. 8052. The latter form indicated that the distribution was premature and no exception applied.

Petitioner asserts that Morgan Stanley prepared three Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2006

---

[13]From 1999 through September 2005 petitioner withdrew distributions totaling $443,230.92 from account No. 7189 (not including the transfer of securities on Mar. 24, 1999).

showing "Distribution Code(s)" as "4".[14]  The Forms 1099-R, however, are inconsistent with the petition, in which petitioner contended that Morgan Stanley issued Forms 1099-R incorrectly showing the distribution code as 1.  The petition also states that petitioner contacted Morgan Stanley to request corrected Forms 1099-R showing code 4, but without result.  Petitioner's position in the petition is consistent with the jointly stipulated letter from a Morgan Stanley representative to Mr. Vance dated August 4, 2008, which stated:  "In 2005 and 2006 Peggy Ann Sears took distributions from account No. 7189, which were all reported as premature distributions on the 1099R issued to her and the IRS."  Because the distribution codes on the Forms 1099-R are inconsistent with other credible evidence in the record, including Morgan Stanley's records, and contradict petitioner's explanations in the petition, we do not give any credence to the coding on the Forms 1099-R in reaching our conclusion.[15]

---

[14]The instructions to Form 1099-R for 2006 describe the distribution code "4" as "Death" and distribution code "1" as "Early distribution, no known exception".

[15]The Forms 1099-R for 2006 showing distribution code "1" that petitioner states were issued are not part of the record, and the Forms 1099-R with the distribution code "4" contained in the record do not show that they are corrected forms.  The record does not explain at what point Morgan Stanley reissued these forms.

Petitioner does not contend that any other exception of section 72(t)(2) applies, and she has not proven that respondent's determination is in error. On the basis of the foregoing, we conclude that the premature 2006 distributions from petitioner's IRA accounts are subject to the 10-percent additional tax.

We have considered the remaining arguments made by the parties, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.