T.C. Memo. 2019-83

UNITED STATES TAX COURT

NANCY BURACK, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11819-17.                    Filed July 8, 2019.

<u>Joseph P. Caracappa</u>, for petitioner.

<u>Arthur W. Petersen III</u> and <u>Audra M. Dineen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  The Commissioner determined a deficiency in petitioner's

2014 Federal income tax of $214,333 and an accuracy-related penalty under

[*2] section 6662(a)[1] of $42,867. After concessions by the parties,[2] the only issue remaining for decision is whether petitioner received a taxable distribution from an individual retirement account (IRA) in 2014.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in the Commonwealth of Pennsylvania when she filed her petition.

In 2014 petitioner had an IRA held with Capital Guardian, LLC/Pershing, LLC,[3] with an account number ending in 0946, and she had a financial adviser at Capital Guardian. Pershing was the custodian of the account. On June 25, 2014,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In her petition, petitioner did not challenge the Commissioner's determinations that: (1) she underreported a taxable health savings account distribution by $337 and (2) she is liable for the additional tax under sec. 223(f)(4)(A). Therefore, those adjustments are deemed conceded. See Rule 34(b)(4).

In his opening brief the Commissioner conceded that petitioner is not liable for the sec. 6662(a) accuracy-related penalty.

[3]Capital Guardian, LLC, will be referred to as Capital Guardian, and Pershing, LLC, will be referred to as Pershing.

[*3] petitioner received a $524,981.89 distribution from the IRA with an account number ending in 0946. Petitioner used the distribution to purchase her current home in Philadelphia while waiting for the sale of her former home in New York City to close. She intended to roll over the distribution back into her IRA within 60 days of receipt.

On Thursday, August 21, 2014, the sale of petitioner's former home closed. On the same day petitioner received a $524,981 Chase Bank cashiers check, drawn from the closing, to redeposit the distribution back into the IRA. The check was made out to "PERSHING FBO NANCY J. BURACK".[4]

Petitioner's financial adviser initially advised her that she could deposit the check into the Pershing account at Bank of New York on Wall Street. But petitioner credibly testified that Capital Guardian later assured her that she could redeposit the distribution into her IRA by overnighting the check to Capital Guardian in North Carolina. On Thursday, August 21, 2014, petitioner overnighted the check to Capital Guardian. The check arrived at Capital Guardian

---

[4]The record is unclear as to why the check was made out to "PERSHING FBO NANCY J. BURACK". Petitioner testified that Capital Guardian instructed her to do so but later testified that the attorney who represented her in the sale may have made the decision.

**[*4]** on Friday, August 22, which was 58 days after petitioner received the IRA distribution.

On August 26, 2014, 62 days after petitioner received the IRA distribution, the check was deposited at Pershing into petitioner's IRA account ending in 0946. Both the deposit and the receipt of funds are reflected on the August 2014 Capital Guardian IRA statement. What happened between Capital Guardian's receipt of the check and the deposit at Pershing is not entirely clear.

Petitioner never communicated with Pershing. Petitioner appears to have communicated with only Capital Guardian about the account. The account statements in the record were generated by Capital Guardian.

On February 27, 2017, the Commissioner issued petitioner a notice of deficiency, in which he determined that petitioner did not repay the IRA distribution until more than 60 days after she received it. Accordingly, the Commissioner determined that petitioner was required to include $524,980 of the IRA distribution in her 2014 gross income.[5] Petitioner timely filed a petition with this Court.

---

[5]The record is unclear as to why the Commissioner determined that petitioner was required to include in gross income $524,980 of the distribution instead of $524,981.89, which is the full amount of the distribution.

**[\*5]**                                    OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that they are incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Section 408(d) governs distributions from individual retirement plans. Generally, section 408(d)(1) provides that any amount distributed from an IRA is includible in gross income by the recipient. The recipient of an IRA distribution can exclude from gross income any amount paid or distributed from an IRA if the full amount is subsequently rolled over into a qualifying IRA not later than the 60th day after the recipient received the payment or distribution. Sec. 408(d)(3)(A). Such distributions and repayments are commonly referred to as "rollover contribution[s]". Sec. 408(d)(3).

The issue we must decide is whether petitioner rolled over the IRA distribution into the Capital Guardian/Pershing IRA account within 60 days of receiving the distribution. Despite the IRA distribution's not being redeposited until 62 days after receipt, petitioner advances two theories for why she is entitled to qualified rollover treatment. Petitioner contends that (1) the rollover was not recorded as timely because of a bookkeeping error by Capital Guardian and (2) she

[*6] is entitled to a hardship waiver under section 408(d)(3)(I). Respondent disputes petitioner's contentions.

1. Bookkeeping Error

In Wood v. Commissioner, 93 T.C. 114 (1989), a taxpayer transferred stock to Merrill Lynch before the expiration of the 60-day rollover period with the instruction that the shares be deposited into his IRA account. But Merrill Lynch's records showed that the shares were deposited into a nonqualified account and rolled over into the IRA after the expiration of the 60-day rollover period. Id. at 117.

In deciding whether the transaction qualified for rollover treatment, we looked at the substance of the transaction and the relationship between the taxpayer and Merrill Lynch. Id. at 120-121. We explained that where book entries conflict with the facts, the facts control. Id. at 121. We found that the transaction was entitled to rollover treatment because Merrill Lynch "had accepted petitioner's Sears stock for deposit to the IRA rollover account and held the stock subject to the IRA trust instrument." Id. We found that Merrill Lynch's failure to record the transfer within 60 days was a bookkeeping error.

While not identical to the present case, Wood is applicable. The substance of the transaction and the relationship between petitioner and Capital

[*7] Guardian/Pershing show that the late deposit is attributable to a bookkeeping error.  Petitioner never communicated with Pershing about her account.  All communication was with Capital Guardian.  All of the account statements in the record were generated by Capital Guardian.  Petitioner credibly testified that Capital Guardian assured her she could roll over the distribution by overnighting the check to Capital Guardian.  It is undisputed that Capital Guardian received the check 58 days after petitioner received the distribution, but the transaction was not recorded by Capital Guardian until 62 days after petitioner received the distribution.

Respondent contends that Wood is inapplicable because Pershing was the custodian and, therefore, petitioner should have deposited the check directly with Pershing.  However, petitioner's IRA was held with both Capital Guardian and Pershing in a single account bearing the same account number.  Petitioner's IRA statement, which was generated by Capital Guardian, listed both Capital Guardian and Pershing.  The relationship between Capital Guardian and Pershing is not entirely clear.  All of the documentation in the record appears to have been generated by Capital Guardian.  The substance of the relationship between petitioner and Capital Guardian shows that Capital Guardian was an appropriate institution for petitioner to send the check to.  Petitioner had no communication

**[\*8]** with Pershing. None of the IRA account statements in the record were from Pershing; they were all generated by Capital Guardian. All discussions about the rollover contribution were held with Capital Guardian. The June 25, 2014, distribution was received by petitioner from a Capital Guardian IRA as shown by the Capital Guardian account statement. There is no documentation generated by Pershing in the record. The rollover payment was received by Capital Guardian 58 days later. Because the check was received by Capital Guardian during the rollover period but not book-entered by Capital Guardian until after, we find that the late recording is due to a bookkeeping error.

2. Hardship Waiver

Our conclusion that the IRA distribution was not deposited during the rollover period because of a bookkeeping error is enough for us to conclude that the distribution qualifies for rollover treatment. See Wood v. Commissioner, 93 T.C. at 122. But as an alternative ground we will also consider whether petitioner is eligible for a hardship waiver.

Rev. Proc. 2003-16, 2003-1 C.B. 359, provides guidance about hardship waivers under section 408(d)(3)(I). It states that an automatic hardship waiver "is granted only: (1) if the funds are deposited into an eligible retirement plan within 1 year from the beginning of the 60-day rollover period; and (2) if the financial

**[*9]** institution had deposited the funds as instructed, it would have been a valid rollover." Rev. Proc. 2003-16, sec. 3.03, 2003-1 C.B. at 360.

In this case the funds were deposited into petitioner's IRA within one year. And petitioner credibly testified that Capital Guardian assured her that the rollover could be completed by overnighting the check to Capital Guardian. Capital Guardian received the rollover check on August 22, 2014, 58 days after petitioner received the distribution. As discussed above, Capital Guardian was an appropriate institution for petitioner to send the check to. See supra p. 7. Had Capital Guardian deposited the check as instructed, there would have been a valid rollover. Therefore, petitioner is eligible for the automatic hardship waiver.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.