T.C. Summary Opinion 2002-152

UNITED STATES TAX COURT

SANFORD M. AND SALLY KIRSHENBAUM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10498-00S.          Filed November 25, 2002.

Sanford M. Kirshenbaum, pro se.

<u>John Aletta</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1998, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1998 in the amount of $12,338 and an accuracy-related penalty under section 6662(a) in the amount of $2,468.

After dismissal of petitioner Sally Kirshenbaum (Mrs. Kirshenbaum),[2] the issues for decision are as follows:

(1) Whether petitioner Sanford M. Kirshenbaum (petitioner) received a taxable distribution of $49,997.15 from his Individual Retirement Account (IRA). We hold that he did.

(2) Whether petitioner received taxable Social Security benefits of $12,475. We hold that he did.

(3) Whether petitioner is entitled to IRA contribution deductions of $4,000. We hold that he is not.

(4) Whether petitioner is liable for an accuracy-related penalty under section 6662(a) due to a substantial understatement of income tax. We hold that he is.

An adjustment to the amount of petitioner's itemized deductions is a purely mechanical matter, the resolution of which is dependent on our disposition of the disputed issues.

---

[2] Petitioner Sally Kirshenbaum did not appear at trial and did not execute the stipulation of facts. Accordingly, the Court will dismiss this action as to her. Rule 123(b). However, decision will be entered against petitioner Sally Kirshenbaum consistent with the decision entered against petitioner Sanford M. Kirshenbaum as to the deficiency in tax and the accuracy-related penalty.

Background

Some of the facts have been stipulated, and they are so found. Petitioners resided in Cranston, Rhode Island, at the time that their petition was filed with the Court.

A. Petitioner and His Background

Petitioner was born on January 3, 1934, and he turned 64 in 1998.

Petitioner obtained a law degree from Boston University Law School and also obtained a Masters of Law in Taxation in 1960 from the same university. From 1961 through 1965, petitioner worked as an attorney in the Collection Litigation Division for the Office of Chief Counsel in Boston, Massachusetts. Thereafter, petitioner became a sole practitioner practicing general law in the State of Rhode Island.

In 1980, petitioner was diagnosed with chronic depression for which he received medical treatment. Petitioner's medical condition adversely affected his professional responsibilities and, therefore, the Rhode Island Supreme Court placed petitioner on inactive status by order dated September 17, 1992, due to his "incapacity to continue to practice law". See Iddings v. McBurney, 657 A.2d 550, 552 (R.I. 1995).

Thereafter, petitioner was unable to continue in the practice of law. As a result, petitioner began receiving payments from the Social Security Administration in 1993, which

continued through the taxable year in issue.

B.  Petitioner's Investment Strategy

Petitioner has maintained several IRAs with institutions such as Fidelity Investments.  As relevant herein, in 1997 petitioner became dissatisfied with the 8-percent return on his IRA deposits with Fidelity Investments and, therefore, petitioner orchestrated an arrangement between himself and Marlene Hope, Inc. "to get out of Fidelity" in order to increase his investment return.  At trial, petitioner described his investment strategy as follows:

> Years back I had been doing some real estate, buying and selling and mortgaging.  I figured that's the only place I can get a job and go back to work. * * *
>
> I came across what I thought was a good deal, a single family house costing $52,450, and I found a tenant, a Section 8[3] tenant, who needed five bedrooms.  She would gladly occupy the house, providing she got approval from the Section 8 people in Providence.  This went through, and ultimately I bought the house for $52,250.  I gave a $2,600 deposit, and the balance of $50,000 or thereabouts was to come from Fidelity.
>
> I spoke to Fidelity about withdrawing this money.  They said as long as it doesn't come into your hands you could roll it over.  I didn't want to pay taxes on some $50,000 in the state I was in then; have to pay taxes on it and then not have it for the future.  I relied on them.  The deal went through.

---

[3]  "Section 8" is a reference to sec. 8 of the United States Housing Authority Act of 1937, ch. 896, 80 Stat. 888, as amended by the Housing and Community Development Act of 1974, Pub. L. 93-383, sec. 201(a), 88 Stat. 662, which is codified as 42 U.S.C. sec. 1437f (2000).  Generally, "Section 8" refers to assisted public housing.

* * * The problem was where was I going to put it?  I knew I couldn't put it in my own hands.  I didn't want to put it back into a mutual fund which was costing me money every year for fees and everything else.  I decided I would buy this house and rent it to this Section 8 woman.

* * * I withdrew * * * $49,997.15 * * * so it went from Fidelity Insurance to the corporate account of Marlene Hope, Inc.

* * * * * * *

I never touched any of that money.  It never went through my fingers at all.

1. <u>Marlene Hope, Inc.</u>

Marlene Hope, Inc. (MHI) was created in the 1970s and subsequently incorporated in the State of Rhode Island as a for-profit corporation.[4]  Petitioner's daughter, Marlene Hope Kirshenbaum[5] (petitioner's daughter), is the president and sole shareholder of MHI.

MHI is engaged in the business of real estate purchasing, selling and development, residential real estate management, and real estate mortgaging.  MHI maintains its corporate funds in an account with First Bank & Trust Co.  MHI filed a Form 1120-A, U.S. Corporation Short-Form Income Tax Return, for the taxable year 1997 reporting total income of $9,679, total deductions of

---

[4]  We note that MHI's business address and telephone number is the same as petitioner's residential address and telephone number.

[5]  On his 1998 Form 1040, petitioner claimed a dependency exemption for Marlene Hope Kirshenbaum, who was born in 1961 and resides with him.

$9,750.96, and a zero tax liability.  However, MHI did not file an income tax return for the taxable years 1998, 1999, and 2000.

### 2.  The Investment Property

On June 26, 1998, MHI entered into a "Single/Multi Family Purchase and Sales Agreement" with Marianna Laliberte (seller) to purchase a one-family cottage at 168 Veazie Street, Providence, Rhode Island 02908 (Veazie property) for $52,250.  MHI placed a $2,600 deposit towards the purchase price and the parties scheduled the closing date for July 14, 1998.

Pursuant to the Veazie property purchase agreement, petitioner directed Fidelity Investments to wire transfer a portion (i.e., $49,997.15) of one of his IRAs (Fidelity IRA) to MHI's corporate bank account at First Bank and Trust Co. Fidelity Investments completed this transaction on July 8, 1998. Fidelity Investments sent petitioner a 1998 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that reported a gross distribution of $49,997.15 and a taxable amount of $49,997.15.[6]

On July 14, 1998, MHI used petitioner's Fidelity IRA distribution to pay the Veazie property purchase price balance of $49,650.  The seller conveyed title to the Veazie property to

---

[6]  Petitioner does not suggest that Fidelity Investments mistakenly issued a Form 1099-R that designated the Fidelity IRA transfer incorrectly as an IRA distribution.

MHI.  MHI maintains the Veazie property as residential rental property for assisted public housing.[7]  The local Housing Authority pays MHI a monthly rent of $800 (housing payment).  The tenant also reimburses MHI directly for utility expenses at $300 per month (plus any excess amount).

    3.  Petitioner's Veazie Property-IRA Arrangement

At trial, petitioner described his Veazie property-IRA arrangement[8] as follows:

> PETITIONER: * * * [The housing payment] was all designated as income from the Section 8 housing. * * * [The housing payment] was designated as an IRA in my account.

> THE COURT: * * * How were you benefitting from this then?

> PETITIONER: I wasn't.

>     *   *   *   *   *   *   *

> THE COURT: Well, isn't an eight percent return better than no return at all?  It sounds like you made a gift to your daughter or this corporation?

> PETITIONER:  No, no, no.  It's designated as a corporation that that money is mine eventually. * * *

> THE COURT: But you're telling us that this arrangement was designed for your ultimate income security?

---

[7]  The same Section 8 tenant has occupied the Veazie property since MHI purchased it in 1998.

[8]  The phrase "Veazie property-IRA arrangement" and its derivatives are intended only for narrative convenience to describe the form of the disputed transaction and does not connote the existence of an IRA for Federal income tax purposes.

PETITIONER: That was my IRA, designated as my IRA.

THE COURT: Okay.  Now at some point or other presumably you would have need for your IRA, correct?

PETITIONER: * * * Instead of drawing it out from Fidelity, I'm drawing it out from MHI.

* * * * * * *

PETITIONER: * * * in addition to the increase in money received because of the rent from Fidelity if I was making eight percent, I'm making ten or 12 here, plus there's a good share that when that property is sold there will be a capital appreciation at least of $10,000, so that was a good investment.

* * * * * * *

PETITIONER: * * * All I know is that it's [the agreement between petitioner and MHI] designated in the corporate files and on that file that it's my IRA.

* * * * * * *

PETITIONER: * * * We don't have a written agreement.  If I set up something like this, she would say okay, you're the father.  You do it.  But, she has no legal obligation to do anything that I say.[9]

---

[9]  Petitioner corroborates this description of the Veazie property-IRA arrangement in his letter to the Internal Revenue Service dated May 23, 2000, which stated, in part, as follows:

I was not pleased with the return I was getting from Fidelity.  On the Veazie Street investment, with a purchase price of $52,250 invested, I, with the rental income, am making over 18% per year in interest, and have a good opportunity for capital gains when the property is sold.  This certainly is a lot better than what I was getting at Fidelity.  This whole transaction is recorded in the corporate records as an IRA investment from me.

The $2,252.85 difference between the purchase price of $52,250.00 and the $49,997.15 transfer from Fidelity is

(continued...)

C. Petitioner's Form 1040

Petitioner and Mrs. Kirshenbaum filed a joint Form 1040, U.S. Individual Income Tax Return, for 1998. Petitioner listed his occupation as retired and Mrs. Kirshenbaum listed her occupation as therapist.[10]

On the Form 1040, petitioner reported the following items:

| | | |
|---|---|---|
| Line 7. Wages, salaries, tips, etc. | | $45,504.70 |
| Line 8a. Taxable interest | | 328.71 |
| Line 10. Taxable refunds * * * | | 573.35 |
| Line 13. Capital gain or (loss) | | (3,000.00) |
| Line 15a. Total IRA distributions | [1]$49,917.15 | |
| Line 15b. Taxable amount | | 0 |
| Line 17. Rental real estate * * * | | (2,774.20) |
| Line 20a. Social security benefits | [2]14,676.00 | |
| Line 20b. Taxable amount | | 0 |
| Line 21. Other income | | 200.00 |
| Line 22. Add * * * lines 7 through 21 * * * **total income** | | 40,832.56 |
| | | |
| Line 23. IRA deduction | 4,000.00 | |
| Line 28. Self-employed health insurance deduction | 4,776.70 | |
| Line 32. Add lines 23 through 31a | | 8,776.70 |
| Line 33. Subtract line 32 from line 22 * * * **adjusted gross income** | | 32,055.86 |
| | | |
| Line 36. * * * **itemized deductions** * * * | | 30,458.37 |
| Line 37. Subtract line 36 from line * * * [33] | | 1,597.49 |
| Line 38. * * * total number of exemptions * * * | | 10,800.00 |
| Line 39. **Taxable income** | | 0 |
| Line 56. **Total tax** | | 0 |

[1] Petitioner handwrote the word "Rollover" next to the amount of $49,917.15.

[2] Petitioner handwrote the word "Disability" next to the amount of $14,676.

----

[9](...continued)
an additional IRA investment from me for the year 1998.

[10] At the time of trial, Mrs. Kirshenbaum was 64 years old. She has a Masters degree in education and works as a full-time speech pathologist for the Pawtucket public school system.

Petitioner attached to the Form 1040 a Form W-2, Wage and Tax Statement, from the Pawtucket Public School System (Pawtucket School) disclosing the payment of wages to Mrs. Kirshenbaum in the amount of $45,504.70 during 1998. The Form W-2 indicated that Mrs. Kirshenbaum contributed to an "ERS"[11] and that she was an active participant in a qualified retirement plan.

D. Respondent's Deficiency Notice

In the notice of deficiency, respondent determined that petitioner received a taxable IRA distribution of $49,997.15 on the basis that petitioner did not roll over his IRA distribution. Respondent also determined that petitioner received taxable Social Security benefits of $12,475, which was not disability income. In addition, respondent determined that both petitioner and Mrs. Kirshenbaum were not entitled to IRA contribution deductions because they did not substantiate their IRA deductions. Finally, respondent determined that petitioners are liable for an accuracy-related penalty due to a substantial understatement of income tax.

Discussion

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under

---

[11] ERS stands for "Employee Retirement System".

section 7491(a)(1), however, the burden of proof shifts to the Commissioner if, inter alia, the taxpayer first introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for income tax.[12] Higbee v. Commissioner, 116 T.C. 438, 442 (2001). With respect to a taxpayer's liability for any penalty, however, section 7491(c) places on the Commissioner the burden of production.

A. The IRA Distribution[13]

Generally, any amount paid or distributed out of an IRA is includable in the recipient's gross income as provided in section 72. Sec. 408(d)(1); sec. 1.408-4(a), Income Tax Regs. This rule does not apply, however, to any amount distributed from an IRA to the individual for whose benefit the account is maintained if the entire amount is paid into an IRA for the benefit of such individual not later than 60 days after the distribution. Sec. 408(d)(3); Schoof v. Commissioner, 110 T.C. 1, 7 (1998); sec. 1.408-4(b)(1), Income Tax Regs.

Moreover, Rev. Rul. 78-406, 1978-2 C.B. 157, provides that a transfer of a participant's IRA funds directly from one trustee

---

[12] Sec. 7491(a)(1) is applicable to court proceedings arising in connection with examinations commencing after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), (c)(1), 112 Stat. 685, 726, 727.

[13] We assume, arguendo, that the Veazie property-IRA arrangement is not a prohibited transaction under sec. 4975(c) despite its specious characteristics. See sec. 408(e).

bank to another trustee bank is not a rollover contribution because no such funds were paid or distributed to the participant and such funds are not within the direct control and use of the participant.[14]  See Crow v. Commissioner, T.C. Memo. 2002-178; Martin v. Commissioner, T.C. Memo. 1992-331, affd. without published opinion 987 F.2d 770 (5th Cir. 1993).  The revenue ruling further states:  "This conclusion would apply whether the bank trustee initiates or the IRA participant directs the transfer of funds."  Rev. Rul. 78-406, 1978-2 C.B. at 157-158.  In other words, the revenue ruling suggests that a trustee-to-trustee transfer is tax free to the IRA owner without the need for the transfer to qualify as a rollover contribution.

As relevant to the present case, an IRA is a trust created or organized in the United States for the exclusive benefit of an individual, but only if the written governing instrument creating the trust meets certain statutory requirements.  Sec. 408(a); sec. 1.408-2, Income Tax Regs.; see Cobb v. Commissioner, 77 T.C. 1096, 1099 (1981), affd. 680 F.2d 1388 (5th Cir. 1982).  Section 1.408-2(b), Income Tax Regs., specifically provides, in part, that the instrument creating the trust must be in writing.  See Phelan v. United States, Civil Action No. 83-1997-Z (D.C. Mass. 1984) (deposit of funds in bank not sufficient to constitute an

---

[14]  We note that, although entitled to consideration, revenue rulings are not precedent.  Dixon v. United States, 381 U.S. 68, 73 (1965).

IRA because bank's acknowledgment did not meet the statutory requirements of sec. 408).

In the petition, petitioner states that the IRA distribution is not taxable because "the taxpayers' demonstrated that they intended to hold and administer the property acquired by the rollover in such a manner as to comply with * * * [section 408(a)(2)] to the best of their ability."[15] At trial, petitioner adamantly asserted that his Fidelity IRA was transferred directly to his Veazie property-IRA via a trustee-to-trustee transfer and, therefore, that the transfer was not taxable. We need not, and do not, make a determination whether petitioner's transaction was either a rollover contribution or a trustee-to-trustee transfer because we conclude that petitioner's Veazie property-IRA is not a valid IRA within the meaning of section 408(a).

In the present case, petitioner directed that his Fidelity IRA distribution be transferred to his Veazie property-IRA. The record is replete with petitioner's conclusory and self-serving testimony regarding the purported validity of his Veazie property-IRA. However, petitioner candidly admitted at trial that no such written agreement regarding his Veazie property-IRA exists, but that such a designation exists in MHI's corporate

---

[15] Sec. 408(a)(2) provides: "The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section."

files.  Petitioner's purported designation, however, was not buttressed by any written documentation.  Thus, the lack of a written governing instrument creating petitioner's purported Veazie property-IRA is fatal to his contention that he established an IRA consistent with section 408(a)(2).[16]  The statute and regulations are clear that a written governing instrument is required to establish an IRA and, therefore, without a written instrument, petitioner's purported Veazie property-IRA must fail to qualify as an IRA pursuant to section 408(a).

In view of the foregoing, we hold that petitioner received a taxable IRA distribution of $49,997.15.  Therefore, we sustain respondent's determination on this issue.

B.  Social Security Benefits

Section 86 provides for the taxability of Social Security benefits pursuant to a statutory formula.  For tax purposes, Social Security disability benefits are treated in the same manner as other Social Security benefits.  Sec. 86(d)(1); Thomas v. Commissioner, T.C. Memo. 2001-120.  Thus, if a taxpayer's modified adjusted gross income (MAGI) plus one-half of the

---

[16]  We do not regard petitioner's statements regarding the Veazie property-IRA as credible evidence within the meaning of sec. 7491(a)(1).  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also Sykes v. Commissioner, T.C. Memo 2001-169.  Accordingly, we decide the issue before us without regard to the general burden-shifting rule of sec. 7491(a)(1).

taxpayer's Social Security benefits exceeds a certain base amount or an adjusted base amount, then a portion of the taxpayer's Social Security benefits is includable in gross income and subject to Federal income tax. Sec. 86(a) through (d). The includable portion, never exceeding 85 percent, varies according to a formula set forth in section 86(a). As relevant in the present case for a joint return, the base amount is $32,000 and the adjusted base amount is $44,000. Sec. 86(c)(1)(B) and (2)(B).

Petitioner contends that the payments he received from the Social Security Administration were nontaxable disability benefits. On the other hand, respondent contends in the notice of deficiency that "We have no indication that the $14,676 was disability income from Social Security." We, however, need not decide whether petitioner's Social Security payments are properly characterized as disability benefits.[17] Assuming arguendo that petitioner in fact received Social Security disability benefits, our analysis of whether such payments are includable in petitioner's gross income remains unchanged. As stated above, Social Security disability benefits are treated the same as other Social Security benefits. Sec. 86(d)(1); Thomas v. Commissioner,

---

[17] Our decision on this issue does not depend on which party has the burden of proof. We note in passing, however, that petitioner does not argue that sec. 7491(a) places the burden of proof on the Commissioner here.

supra.

Accordingly, because petitioner's MAGI plus one-half of his benefits exceeds the adjusted base amount, a portion of his Social Security benefits is taxable. See sec. 86(a)(2), (c)(2). Thus, we sustain respondent's determination on this issue.

C. Petitioner's IRA Deductions

As a preliminary matter, we note that deductions are strictly a matter of legislative grace, and a taxpayer bears the burden of proving his or her entitlement to the claimed deductions.[18] Rule 142(a)(1); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(a)(2). Taxpayers are required to maintain records sufficient to substantiate their claimed deductions. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Generally, a taxpayer is entitled to a deduction for qualified retirement contributions. Sec. 219(a); sec. 1.219-1(a), Income Tax Regs. As relevant herein, section 219(e) defines a qualified retirement contribution as "any amount paid in cash for the taxable year by or on behalf of an individual to an individual retirement plan for such individual's benefit."[19]

---

[18] Because petitioner has not established that he fully complied with the substantiation requirements of sec. 7491(a)(2)(A), we decide the issue before us without regard to sec. 7491(a)(1).

[19] Sec. 7701(a)(37) defines an individual retirement plan as an individual retirement account described in sec. 408(a) and
(continued...)

Also as relevant to the present case, the maximum allowable deduction in any taxable year for a married individual is $2,000. Sec. 219(c). The amount of the deduction, however, may be limited where the taxpayer or the taxpayer's spouse was, for any part of the taxable year, an active participant in a qualified retirement plan. Sec. 219(g)(1), (5)(A).

Petitioner contends that he and Mrs. Kirshenbaum each contributed $2,000 to an existing traditional IRA for 1998. Petitioner further claims that he is entitled to an IRA deduction even if Mrs. Kirshenbaum is covered by the Pawtucket School's pension plan because Mrs. Kirshenbaum does not have any vested rights in her pension plan. In addition, petitioner steadfastly claims that he is entitled to an IRA deduction "whether it's from a rollover or from out of pocket."

However, there is no evidence to support petitioner's contention that he or Mrs. Kirshenbaum made qualified retirement contributions in 1998 other than his unsubstantiated allegations. At trial, petitioner testified that he contributed to an existing IRA, but he could not clearly articulate whether such contribution was made to Fidelity Investments, another IRA account, or some other qualified retirement account. Most importantly, petitioner did not provide any substantiating

---

[19](...continued)
as an individual retirement annuity described in sec. 408(b). See Cobb v. Commissioner, 77 T.C. 1096, 1099 (1981).

records of his purported IRA contribution nor did he demonstrate that he maintained such records.  The same may be said regarding any IRA that Mrs. Kirshenbaum may have maintained.

We conclude that petitioner failed to substantiate the making of any qualified IRA contribution pursuant to section 219 and, therefore, is not entitled to IRA contribution deductions. Thus, we sustain respondent's determination on this issue.

D.  Accuracy-Related Penalty

As previously mentioned, section 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty.[20]  However, the taxpayer still has the burden of proving that the Commissioner's determination of the accuracy-related penalty is erroneous.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001); BJR Corp. v. Commissioner, 67 T.C. 111, 131 (1976); Bebb v. Commissioner, 36 T.C. 170 (1961).  Moreover, in evaluating evidence, the Court is not bound to accept as gospel the unverified and undocumented testimony of a taxpayer.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd.

---

[20]  We hold that respondent satisfied the burden of production under sec. 7491(a)(1) because the record shows that petitioner failed to include certain items in income and claimed deductions to which he was not entitled.  Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

per curiam 540 F.2d 821 (5th Cir. 1976).

As relevant herein, section 6662(a) imposes an accuracy-related penalty equal to 20-percent of an underpayment that is due to a substantial understatement of income tax. See sec. 6662(a) and (b)(2). An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10-percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Tax is not understated to the extent that the treatment of the item is (1) based on substantial authority, or (2) relevant facts are adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer. Sec. 6662(d)(2)(B).

Moreover, the accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability for such year. Id.

Petitioner reported zero tax on his 1998 return. The amount

required to be shown on the return was $12,338.  Therefore, petitioner understated his income tax in an amount greater than $5,000 or 10-percent of the tax required to be shown on his return.

Petitioner did not present any evidence or make any showing as to why respondent's penalty determination is in error. Petitioner contends that he is not liable for the accuracy-related penalty because he had a reasonable basis for the tax items at issue and because he relied on the advice of a representative of Fidelity Investments.  Given petitioner's legal education and experience, petitioner did not have a reasonable basis for the tax items at issue, especially in the absence of substantiating records.  Moreover, petitioner's purported reliance on a financial representative was not reasonable nor prudent.  See sec. 1.6662-4(c), Income Tax Regs.

The facts and circumstances of this case support the imposition of an accuracy-related penalty under section 6662(a) and (b)(2).  Accordingly, we sustain respondent's determination on this issue.

E.  Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Order of Dismissal as to Sally Kirshenbaum and decision will be entered for respondent</u>.