T.C. Summary Opinion 2010-87


UNITED STATES TAX COURT


SHANNON B. AND RITA L. BYRD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24201-05S.                 Filed June 29, 2010.


Shannon B. Byrd and Rita L. Byrd, pro sese.

<u>Beth A. Nunnink</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This case for the
redetermination of deficiencies was heard pursuant to the
provisions of section 7463.[1]  Pursuant to section 7463(b), the

------

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.  Rule references are to the Tax Court Rules of
Practice and Procedure.

decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated November 28, 2005, respondent determined deficiencies in petitioners' Federal income taxes and penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 2002 | $11,512 | $1,391.60 |
| 2003 | 10,046 | 2,009.20 |
| 2004 | 11,359 | -0- |

The issues for decision are: (1) Whether for 2002 petitioners are entitled to a home mortgage interest deduction in excess of the amount respondent allowed; (2) whether for 2004 petitioners are entitled to a depreciation deduction in excess of the amount respondent allowed for a certain automobile awarded to and used by Mrs. Byrd in connection with her trade or business; (3) whether for 2002 petitioners are liable for the section 72(t) additional tax with respect to a distribution from a qualified retirement plan; (4) whether for each year in issue, petitioners properly computed amounts shown for cost of goods sold and gross income on a Schedule C, Profit or Loss From Business, included with their joint Federal income tax return; and (5) whether for 2002 and/or 2003 petitioners are liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. Petitioners are, and were at all times relevant, married to each other. They filed a joint Federal income tax return for each year in issue. At the time the petition was filed, they resided in Tennessee.

Mr. Byrd suffered a serious heart attack during 2002. After recovering he resumed his full-time employment but, for health reasons, terminated his part-time job. Before the close of 2002 he requested and received a $22,779 distribution from a qualified retirement plan (the pension distribution). He was 51 years old when he received the pension distribution.

In 2002, following Mr. Byrd's heart attack, Mrs. Byrd, concerned about the family's loss of income, and "[seeing] an opportunity to make some extra income", became an "independent [sales] consultant" for BeautiControl Cosmetics (BeautiControl). As a BeautiControl consultant she purchased various cosmetic products from the company for resale to her customers and engaged in activities designed to encourage other individuals to become BeautiControl sales consultants in a distribution network headed by her. For the most part, her activities in connection with her position with BeautiControl were conducted from her residence. At some point between 2003 and 2004 there were 62 BeautiControl consultants within her distribution network.

As a result of her sales levels, BeautiControl awarded her a 2004 red Ford Mustang convertible. She used the Mustang, adorned with logos identified with BeautiControl, for transportation to meet with prospective or existing customers, to attend meetings and presentations, and to deliver products, all in connection with her BeautiControl activities. BeautiControl issued Mrs. Byrd a Form 1099-MISC, Miscellaneous Income, for 2004 reporting the value of the Mustang.

For each year in issue, petitioners reported the income and expenses attributable to Mrs. Byrd's BeautiControl activities on a Schedule C included with their joint Federal income tax return. The amounts shown for gross receipts, cost of goods sold, and gross income on each Schedule C are as follows:

| Year | Gross Receipts | Cost of Goods Sold | Gross Income |
|------|----------------|--------------------|--------------|
| 2002 | $12,522 | $25,274 | ($12,752) |
| 2003 | 12,395 | 34,087 | (21,692) |
| 2004 | 41,116 | 13,324 | 27,792 |

The amounts shown as cost of goods sold were computed with reference only to the total annual cost of the BeautiControl products that she purchased for resale or promotional purposes.

Petitioners included the pension distribution in the income reported on their 2002 joint Federal income tax return, but the tax shown on that return does not include the section 72(t) additional tax imposed on early distributions from qualified retirement plans.

On the Schedule A, Itemized Deductions, attached to their 2002 return, petitioners claimed a home mortgage interest deduction of $15,102.  Respondent received information from petitioners' mortgagee that indicated they paid $11,023 of mortgage interest during 2002.

Petitioners included the value of the Mustang as shown on the Form 1099-MISC in the income reported on their 2004 joint Federal income tax return.  On the Schedule C attached to that return they claimed a $15,084 depreciation deduction attributable to that car.  The depreciation deduction is computed as though the car was used 100 percent in Mrs. Byrd's BeautiControl activity and eligible for a special depreciation allowance discussed infra.

In the above-referenced notice of deficiency, respondent: (1) Disallowed $4,079 of the mortgage interest deduction claimed on the Schedule A included with petitioners' 2002 return; (2) disallowed a portion of the depreciation deduction claimed on the Schedule C included with petitioners' 2004 return; (3) increased petitioners' 2004 tax liability by imposing the section 72(t) additional tax on the pension distribution; (4) adjusted the amounts shown for cost of goods sold and gross income shown on the Schedule C included with petitioners' return for each year in issue; and  (5) imposed a section 6662(a) accuracy-related penalty on various grounds for 2002 and 2003.

Discussion

I.  Disallowed Deductions

Two of the issues listed above involve deductions, portions of which have been disallowed, and we turn our attention first to those issues.

Respondent's determinations, having been made in a notice of deficiency, are presumed correct, and petitioners bear the burden of proving those determinations to be erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Their burden of proof includes establishing both the right to and the amount of any deduction claimed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation.  See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A.  Home Mortgage Interest Deduction

In general, a taxpayer is entitled to a deduction for qualified residence interest (referred to on the Schedule A as "Home mortgage interest").  Sec. 163(a), (h)(2)(D).  Taxpayers must be able to substantiate the amount claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Respondent disallowed $4,079 of the $15,102 home mortgage interest deduction petitioners claimed on their 2002 return for

lack of substantiation.  Petitioners have failed to establish that they are entitled to a deduction for home mortgage interest in excess of the amount respondent allowed.

B.    Depreciation of Mustang

Section 168(k)(4) provides for an additional depreciation deduction (bonus depreciation) of 50 percent of the adjusted basis of qualified property.  Qualified property is defined as property that meets the following requirements:  (1) The property was MACRS property with an applicable recovery period of 20 years or less, unless it was certain computer software, water utility property, or qualified leasehold improvement property; (2) the original use of the property commenced with the taxpayer after May 5, 2003; (3) the taxpayer acquired the property after May 5, 2003, and before January 1, 2005; and (4) the taxpayer placed the property in service before January 1, 2005.  Sec. 168(k)(4).

On the Form 4562, Depreciation and Amortization, attached to their 2004 tax return, petitioners claimed a $12,570 special depreciation allowance and an MACRS bonus depreciation deduction of $2,514, for a total of $15,084.  The entire amount of the depreciation deduction reported on the Schedule C is attributable to the 2004 Ford Mustang.

Respondent contends that petitioners are not entitled to a section 168(k) bonus depreciation deduction because the Mustang fails to meet the definition of qualified property under section

168(k). Furthermore, respondent argues that the Mustang is listed property within the meaning of section 280F(d)(4)(A)(i) and therefore does not qualify for the bonus depreciation afforded by section 168(k).

If any listed property is not predominantly used in a qualified business, the alternative depreciation system under section 168(g) must be used to calculate the depreciation deduction. Sec. 280F(b)(1). Property is treated as predominantly used in a qualified business if the business use exceeds 50 percent. Sec. 280F(b)(3). Section 168(k) excepts from the bonus depreciation allowance any property to which the alternative depreciation system under section 168(g) applies, unless the taxpayer elected to use the alternative depreciation system.

The Mustang is MACRS property with an applicable recovery period of 5 years and was acquired and placed in service during the applicable periods. Petitioners allege that the Mustang was used almost exclusively for business purposes, and we agree. Although the Mustang is listed property under section 280F(d)(4), it was used predominantly for business purposes and therefore it is not subject to section 168(g). Accordingly, petitioners' Mustang satisfies the definition of qualified property within the meaning of section 168(k)(2)(A).

Petitioners have satisfied the requirements of section 168(k) and therefore are entitled to the bonus depreciation afforded by section 168(k)(4), limited only by section 280F(a)(1)(A)(i).

## II. Early Distribution Pursuant to Section 72(t)

Generally, amounts distributed from "a qualified retirement plan (as defined in section 4974(c))" are includable in gross income as provided in section 72. Sec. 408(d)(1). A 10-percent additional tax is imposed under section 72(t) on any distribution that fails to satisfy one of the exceptions for premature distributions as provided in section 72(t)(2). This Court has consistently held that it is bound by the list of statutory exceptions. See, e.g., Arnold v. Commissioner, 111 T.C. 250, 255 (1998); Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993).

Petitioners agree that the pension distribution was made from sources contemplated by section 72(t). They argue that the additional tax does not apply because they used the distribution to supplement the income from Mr. Byrd's second job that he "no longer was able to do because of illness". The "illness" to which petitioners refer is the heart attack referenced above.

Section 72(t)(2)(A)(iii) provides an exception for distributions to disabled taxpayers (within the meaning of section 72(m)(7)) to which the 10-percent additional tax does not

apply. Section 72(m)(7) provides that an individual is considered disabled if: (1) He is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment", and (2) the disability "can be expected to result in death or to be of long-continued and indefinite duration." See Dwyer v. Commissioner, 106 T.C. 337 (1996). Under section 72(m)(7), the taxpayer must furnish proof of the aforementioned elements. Section 1.72-17A(f)(2), Income Tax Regs., provides that the determination is to be made on the basis of all the facts and includes a list of nonexclusive examples of impairments that would ordinarily be considered as preventing substantial gainful activity.

Petitioners have failed to substantiate Mr. Byrd's condition with a physician's note or other evidence detailing his disability. He was able to return to his full-time employment after recovering from his heart attack. Therefore, we conclude that any disability Mr. Byrd suffered as a result of his heart attack in 2002 did not render him "disabled" within the meaning of section 72(m)(7). Accordingly, petitioners are liable for the 10-percent additional tax on an early distribution pursuant to section 72(t) in 2002.

III. Schedule C Items--Gross Receipts and Cost of Goods Sold

Respondent determined deficiencies in petitioners' Federal income taxes for 2002 and 2003 due to understatements of gross

receipts from Mrs. Byrd's Schedule C business and miscalculations of cost of goods sold. In general, petitioners argue that no such understatements and miscalculations exist.

A. Cost of Goods Sold

Petitioners reported cost of goods sold on their Schedules C of $25,274, $34,087, and $13,324 on their 2002, 2003, and 2004 returns, respectively. In the notice of deficiency respondent determined that petitioners overstated cost of goods sold in 2002 and 2003 and understated cost of goods sold in 2004.

Petitioners acknowledge that they failed to take inventories into account in the calculation of cost of goods sold shown on the Schedule C for each year in issue. According to petitioners, the amounts shown on the Schedules C consist merely of the total of the purchases made during each year.[2]

The parties now agree that the amounts shown for cost of goods sold on the Schedules C, as well as the adjustments made to these items in the notice of deficiency, are incorrect. They further agree that the purchases total $4,748, $34,359.86, and $18,778.53 for 2002, 2003, and 2004, respectively. The record leaves us no choice but to assume that all items purchased during

---

[2]In the case of "businesses that sell a large number of essentially similar or fungible items" the cost of goods sold is computed in steps, using inventories and an accrual method of accounting, as follows: Beginning inventory + purchases – ending inventory = cost of goods sold. See Gertzman, Federal Tax Accounting, par. 6.02[2], at 6-5 to 6-6 (2d ed. 1993).

any year were sold before the close of that year; at least nothing in the record suggests otherwise. That being so, the total purchase amounts would, in effect, reflect the cost of goods sold for each year. Therefore, we find that the Schedules C cost of goods sold for 2002, 2003, and 2004 should be $4,748, $34,359.86, and $18,778.53, respectively.

B.  Understatements of Income

Section 446(b) allows respondent to recompute petitioners' income "under such method as, in the opinion of the Secretary, does clearly reflect income" if petitioners' method does not clearly reflect income. The percentage or markup approach is an acceptable method under section 446(b) to recompute income in certain businesses, including petitioners' merchandising business. Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Bernstein v. Commissioner, 267 F.2d 879 (5th Cir. 1959), affg. T.C. Memo. 1956-260.

In the notice of deficiency respondent adjusted gross receipts for each of the taxable years in issue to reflect the average 50-percent markup for BeautiControl. In the notice of deficiency respondent calculated gross receipts by increasing the determination of cost of goods sold by 50 percent.

According to petitioners, respondent's calculation of gross receipts does not accurately reflect the amount of unreported income for the years in issue because it fails to consider gifts

and promotional materials given away. Theoretically, their point is well made. But their failure to keep or produce any records that quantify such gifts and giveaways compels us to ignore their generalized claim. Gross receipts attributable to Mrs. Byrd's Schedule C business shall be determined as computed by the method advanced by respondent but only after taking into account the above-found amounts for cost of goods sold.

## IV. Section 6662(a) Accuracy-Related Penalty

For each of the years 2002 and 2003 respondent determined that petitioners are liable for a section 6662(a) accuracy-related penalty. Various grounds for the imposition of that penalty are set forth in the notice of deficiency. The Commissioner has the burden of production to show imposition of the penalty is appropriate; but if it is shown that the taxpayer acted in good faith and there is reasonable cause for the deficiency, then the section 6662(a) accuracy-related penalty is not applicable. Secs. 6664(c), 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioners relied upon a paid income tax return preparer to compute their Federal income tax liability shown on their joint return for each year in issue. Given their backgrounds, we are satisfied that their reliance on their return preparer was reasonable. We are further satisfied that petitioners had reasonable cause and acted in good faith with respect to whatever

deficiency remains after respondent's concessions and the foregoing determinations for each year in issue are taken into account.  They are not liable for the section 6662(a) accuracy-related penalty for any year in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.